UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| JOSE R. LESTON, | : | Civil Action No. |
| Plaintiff, | : | |
| | : | 3:15-cv-01260-AVC |
| v. | : | |
| | : | |
| STAMFORD HOSPITAL, | : | |
| Defendant. | : | JULY 1, 2016 |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**

**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Michael J. Soltis (CT07143)
Justin Theriault (CT28568)
JACKSON LEWIS P.C.
1010 Washington Boulevard, 7th Floor
Stamford, CT 06901
Tel: (203) 961-0404
Fax: (203) 324-4704
Email:  soltism@jacksonlewis.com
             justin.theriault@jacksonlewis.com

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.   FACTUAL BACKGROUND ............................................................................. 2

   A.   PLAINTIFF'S EMPLOYMENT WITH STAMFORD HOSPITAL ............................ 2

   B.   STAMFORD HOSPITAL'S CORRECTIVE ACTION POLICY ............................. 3

   C.   STAMFORD HOSPITAL'S PATIENT IDENTIFICATION POLICY ....................... 3

   D.   PLAINTIFF'S DISCIPLINE AND TERMINATION ........................................... 4

   E.   THE "BE ON THE LOOK OUT" NOTICE .................................................... 6

   F.   PLAINTIFF'S COMPLAINTS ABOUT LAURA MARTINELLI ........................... 7

        1.   "Touching" Incident in December of 2011 ........................................ 7

        2.   "True Colors" Class in July of 2012. .............................................. 8

        3.   Ms. Martinelli Was Impolite To Plaintiff in February of 2014. ............. 9

III.  ARGUMENT .................................................................................................. 9

   A.   SUMMARY JUDGMENT STANDARD ............................................................ 9

   B.   SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S GENDER DISCRIMINATION
        CLAIMS BECAUSE PLAINTIFF FAILS TO SET FORTH A PRIMA FACIE CASE OF GENDER
        DISCRIMINATION OR TO DEMONSTRATE THAT THE REASONS FOR HIS TERMINATION WERE A
        MERE PRETEXT FOR UNLAWFUL DISCRIMINATION. ...................................... 10

        1.   Plaintiff Has Failed to Establish a Prima Facie Case of Gender Discrimination under
             McDonnell Douglas Because He Cannot Establish That The Circumstances of His Termination
             Give Rise to An Inference of Discrimination. ..................................... 11

        2.   Plaintiff Has Failed to Present Evidence that the Legitimate, Non-Discriminatory Reason
             for His Termination is Pretextual. ................................................. 15

   C.   SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S SEXUAL HARASSMENT
        CLAIMS BECAUSE THEY ARE UNTIMELY. .................................................. 17

   D.   SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S RETALIATION CLAIM
        BECAUSE PLAINTIFF CANNOT ESTABLISH A CAUSAL CONNECTION BETWEEN ANY PROTECTED
        ACTIVITY AND HIS TERMINATION OR OTHERWISE SHOW THAT THE REASONS FOR HIS
        TERMINATION WERE PRETEXTUAL. .......................................................... 18

        1.   Plaintiff's Complaints Regarding the December 2011 and July 2012 Incidents are Too
             Temporally Remote to Establish a Prima Facie Case. ........................... 19

        2.   Plaintiff Has Failed to Proffer Evidence Raising an Issue of Fact as to the Truthfulness of
             Defendant's Legitimate, Non-Discriminatory Reason for His Termination. ...... 20

   E.   SUMMARY JUDGMENT SHOULD BE GRANTED ON ALL COMMON-LAW CLAIMS ARISING OUT
        OF THE LIMITED PUBLICATION OF THE BOLO NOTICE. ................................ 21

        1.   The BOLO Notice Was Protected by a Qualified or Conditional Privilege. ..... 21

        2.   Plaintiff's Libel Per Se, Libel and False Light Claims Must Fail Because the Statements in
             the Hospital's BOLO Notice Were True. ......................................... 24

ii

3.    *Plaintiff's Libel Per Se and Libel Claims Must Fail Because the Statements in the Hospital's BOLO Notice Were Protected Opinion.* ........................................................................ 26

4.    *Plaintiff's Libel Per Se and Libel Claims Must Fail Because Plaintiff Cannot Establish a Per Se Defamation Claim or Demonstrate the Existence of Pecuniary Harm.* ............................ 28

5.    *Plaintiff's Publicity of Private Facts and False Light Claims Fail Because Defendant Did Not Give Unreasonable Publicity to the BOLO Notice.* ............................................................... 30

6.    *Plaintiff's Publicity of Private Facts Claim Fails Because the Facts in the BOLO Were Not Part of Plaintiff's "Private Life."* .......................................................................................... 32

7.    *Plaintiff's False Light Claim Must Also Fail Because the Hospital Did Not Have Knowledge of or Act in Reckless Disregard as to Any Alleged Falsity of the Statements in the BOLO Notice, Nor Would Such Statements Permit Serious Offense To Be Taken by a Reasonable Person in Plaintiff's Position.* ............................................................................................... 33

**F.    SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BECAUSE PLAINTIFF CANNOT ESTABLISH EXTREME AND OUTRAGEOUS CONDUCT.** ................................................................................................... 34

**G.    SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S CLAIM OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BECAUSE PLAINTIFF CANNOT ESTABLISH WRONGFUL CONDUCT DURING THE TERMINATION PROCESS** ...................................................................... 38

**IV.    CONCLUSION** ....................................................................................................................... 39

## TABLE OF AUTHORITIES

**CASES**

*Aiello v. Stamford Hospital*,
  2011 U.S. Dist. LEXIS 87121 (D. Conn. Aug. 8, 2011) ....................................... 4, 12, 13, 21
*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .............................................................................................. 10
*Appleton v. Bd. of Educ.*,
  254 Conn. 205 (2000) ......................................................................................... 35, 36
*Battista v. United Illuminating Co.*,
  10 Conn.App. 486 (1987) ..................................................................................... 29
*Bell v. Bd. of Educ.*,
  55 Conn. App. 400 (1999) ...................................................................................... 35
*Bickerstaff v. Vassar College*,
  196 F.3d 435 (2d Cir. 1999) .................................................................................... 14
*Brasic v. Heinemann's Inc.*,
  121 F.3d 281 (7th Cir. 1997) .................................................................................. 14
*Brown v. Ellis*,
  40 Conn. Supp. 165 (Conn. Super. Ct. 1984) ...................................................... 36
*Brown v. Middaugh*,
  41 F. Supp. 2d 172 (N.D.N.Y. 1999) ..................................................................... 12
*Burgos v. Sullivan & Cromwell*,
  2001 U.S. Dist. LEXIS 8412 (S.D.N.Y. June 25, 2001) ...................................... 16
*Burns v. City of Utica*,
  590 Fed. Appx. 44 (2d Cir. 2014) ........................................................................... 18
*Carrol v. Allstate Ins. Co.*,
  262 Conn. 433 (2003) ............................................................................................ 35
*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................ 9
*Chertkova v. Conn. Gen. Life Ins. Co.*,
  2002 Conn. Super. LEXIS 2348 (Conn. Super. July 12, 2002) ........................... 31
*Chukwurah v. Stop & Shop Supermarket Comp.*,
  2009 U.S. App. LEXIS 25818 (2d Cir. November 25, 2009) ............................... 15
*Collins v. New York City Trans. Auth.*,
  305 F.3d 113 (2d Cir. 2002) ................................................................................... 10
*Corniello v. Fuzion Med. Aesthetic Boutique, LLC*,
  2015 Conn. Super. LEXIS 2264 (Conn. Super. Ct. Aug. 26, 2015) ..................... 32
*Corsello v. Emerson Bros., Inc.*,
  106 Conn. 127 (1927) ............................................................................................ 29
*Curry v. Allan S. Goodman, Inc.*,
  286 Conn. 390 (2008) ............................................................................................ 11
*Daley v. Aetna Life & Casualty Co.*,
  249 Conn. 766 (1995) ................................................................................... 24, 25, 27
*Davis v. Liberty Mut. Ins. Co.*,
  218 F. Supp 2d 256 (D. Conn. 2002) .................................................................... 10
*Decker v. Martin*,
  2010 Conn. Super. LEXIS 168 (Conn. Super. Ct. Jan. 19, 2010) ....................... 22
*DeMaio v. Laugeni*,
  2013 Conn. Super. LEXIS 609 (Conn. Super. Ct. Mar. 14, 2013) ....................... 30

*Doe v. Sotil Tree Serv., LLC*,
   2015 Conn. Super. LEXIS 2572 (Conn. Super. Ct. Oct. 15, 2015) ............................ 33
*DOT v. Commission on Human Rights and Opportunities*,
   272 Conn. 457 (2005) ................................................................................................. 10
*Ekhato v. Rite Aid Corp.*,
   2012 U.S. Dist. LEXIS 119496 (E.D. La. Aug. 23, 2012) ......................................... 16
*Elam v. Regions Fin. Corp.*,
   601 F.3d 873 (8th Cir. 2010) ...................................................................................... 14
*Faria v. Instructional Sys., Inc.*,
   259 F.3d 91 (2d Cir. 2001) ......................................................................................... 15
*Feingold v. New York*,
   366 F.3d 138 (2d Cir. 2004) ....................................................................................... 18
*Gan v. City of N.Y.*,
   996 F.2d 522 (2d Cir. 1993) ....................................................................................... 10
*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) .................................................................................................... 27
*Gillian v. Vivanco-Small*,
   2010 Conn. Super. LEXIS 493 (Conn. Super. Ct. Mar. 2, 2010) .............................. 38
*Gleason v. Smolinski*,
   319 Conn. 394 (2015) ................................................................................................. 22
*Goenaga v. March of Dimes Birth Defect Found.*,
   51 F.3d 14 (2d Cir. 1995) ........................................................................................... 10
*Goodrich v. Waterbury Republican-American, Inc.*,
   188 Conn. 107 (1982) ................................................................................................. 27
*Grady v. Affiliated Cent.*,
   130 F.3d 553 (2d Cir. 1997) ....................................................................................... 16
*Gross v. FBL Fin. Servs.*,
   557 U.S. 167 (2009) .................................................................................................... 20
*Grunberg v. Quest Diagnostics, Inc.*,
   2008 U.S. Dist. LEXIS 8205 (D. Conn. Feb. 5, 2008) .............................................. 38
*Handler v. Arends*,
   1995 Conn. Super. LEXIS 660 (Conn. Super. March 1, 1995) .................................. 31
*Hassett v. Carroll*,
   85 Conn. 23 (1911) ..................................................................................................... 22
*Hazen Paper Co. v. Biggins*,
   507 U.S. 604 (1993) .................................................................................................... 20
*Hebrew Home & Hosp., Inc. v. Brewer*,
   92 Conn. App. 762 (Conn. App. Ct. 2005) ................................................................ 18
*Heim v. California Federal Bank*,
   78 Conn. App. 351 (Conn. App. Ct. 2003) ................................................................ 37
*Herman v. Post*,
   98 Conn. 792 (1923) ................................................................................................... 28
*Hiers v. Cohen*,
   31 Conn. Sup. 305, 329 A.2d 609 (1973) .................................................................. 35
*Hirschberg v. Bank of America, N.A.*,
   754 F. Supp. 2d 500 (E.D.N.Y. 2010) ....................................................................... 13
*Hopkins v. O'Connor*,
   282 Conn. 821, 925 A.2d 1030 (2007) ....................................................................... 24
*Jackson v. New York State Office of Mental Health*,
   2012 U.S. Dist. LEXIS 165876 (S.D.N.Y. Nov. 15, 2012) ....................................... 19

*Jackson v. Water Pollution Control Auth.,*
   278 Conn. 692 (2006) ........................................................................................ 11
*Jeffress v. Yale Univ.,*
   1997 Conn. Super. LEXIS 2321 (Conn. Super. Ct. Aug. 28, 1997) ..................... 37
*Jonap v. Silver,*
   1 Conn. App. 550 (Conn. App. Ct. 1984) ................................................ 25, 33, 34
*Jones v. H.N.S. Mgmt. Co.,*
   2003 Conn. Super. LEXIS 2704 (Conn. Super. Ct. Sept. 25, 2003) ..................... 38
*Khan v. Bank of Am.,*
   2010 U.S. App. LEXIS 8190 (2d Cir. 2010) ............................................... 15, 16
*LaFontaine v. Family Drug Stores, Inc.,*
   33 Conn.Sup. 66, 360 A.2d 899 (1976) ............................................................. 31
*Levy v. Commission on Human Rights & Opportunities,*
   236 Conn. 96 (1996) ........................................................................................ 11
*Lucas v. United Illuminating Co.,*
   2003 Conn. Super. LEXIS 1546 (Conn. Super. Ct. May 12, 2003) ..................... 38
*Maietta v. Potter,*
   70 Fed. Appx. 28 (2d Cir. 2003) ...................................................................... 10
*Manoharan v. Columbia U. Col. Of Phys & Surgeons,*
   842 F.2d 590 (2d Cir. 1988) ............................................................................. 19
*Marasco v. Connecticut Regional Vocational-Technical School System,*
   2012 Conn. Super. LEXIS 2572 (Conn. Super. Ct. Oct. 15, 2012) ..................... 18
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574, 586 (1986) ................................................................................. 10
*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792 (1973) ........................................................................................ 10
*Meade v. Orthopedic Assocs. of Windham County,*
   2007 Conn. Super. LEXIS 3424 (Conn. Super. Ct. Dec. 27, 2007) ............... 30, 31
*Mercer v. Cosley,*
   110 Conn. App. 283 (Conn. App. Ct. 2008) ...................................................... 28
*Mercer v. Cosley,*
   110 Conn. App. 304 (Conn. App. Ct. 2008) ...................................................... 25
*Miles v. Perry,*
   11 Conn. App. 584 (Conn. App. Ct. 1987) .............................................. 22, 28, 30
*Moriarty v. Lippe,*
   162 Conn. 371 (1972) ...................................................................................... 29
*Murray v. Bridgeport Hospital,*
   40 Conn. Sup. 56, 480 A.2d 610 (1984) ............................................................ 35
*Norton v. Sam's Club,*
   145 F.3d 114 (2d Cir. 1998) ............................................................................. 14
*Ortiz v. Prudential Ins. Co.,*
   94 F. Supp. 2d 225 (D. Conn. 2000) .................................................................. 11
*Pace v. Bristol Hosp.,*
   964 F. Supp. 628 (D. Conn. 1997) .................................................................... 31
*Parsons v. United Techs. Corp.,*
   243 Conn. 66 (1997) ................................................................................... 36, 37
*Pascone v. Morning Union Co.,*
   79 Conn. 523 (1907) ........................................................................................ 28
*Perodeau v. City of Hartford,*
   259 Conn. 729 (2002) ................................................................................ 36, 38, 39

*Petrosino v. Bell Atl.*,
    385 F.3d 210 (2d Cir. 2004) .............................................................................. 18
*Petrucelli v. Catapano*,
    107 Conn. 122 (1927) ........................................................................................ 29
*Petyan v. Ellis*,
    200 Conn. 243 (1986) ........................................................................................ 35
*Petyan v. New York City Law Department*,
    2015 U.S. Dist. LEXIS 53380 (S.D.N.Y. Apr. 23, 2015) .................................. 19
*Proto v. Bridgeport Herald Corp.*,
    136 Conn. 557 (1950) ................................................................................. 28, 29
*Pryor v. Brignole*,
    2016 Conn. Super. LEXIS 426 (Conn. Super. Ct. Mar. 8, 2016) ....................... 27
*Ruiz v. County of Rockland*,
    609 F. 3d 486 (2d Cir. 2010) ............................................................................. 12
*Savage v. Andoh*,
    2013 Conn. Super. LEXIS 309 (Conn. Super. Ct. Feb. 6, 2013)......................... 26
*Slattery v. Swiss Reinsurance Am. Corp.*,
    248 F.3d 87 (2001) ............................................................................................ 15
*Sweet v. Tigard-Tualatin Sch. Dist.*,
    124 Fed. Appx. 482 (9th Cir. 2005)................................................................... 23
*Tomka v. Seiler Corp.*,
    66 F.3d 1295 (2d Cir. 1995) .............................................................................. 18
*Tracy v. New Milford*,
    101 Conn. App. 560 (Conn. App. Ct. 2007)....................................................... 36
*Univ. of Tex. Southwestern Med. Ctr. v. Nassar*,
    133 S. Ct. 2517 (2013)....................................................................................... 20
*Valencia v. St. Francis Hosp. & Med. Ctr.*,
    1996 Conn. Super. LEXIS 894 (Conn. Super. Ct. April 3, 1996) ....................... 37
*Wroblewski v. Lexington Gardens, Inc.*,
    188 Conn. 44 (1982).......................................................................................... 11

## STATUTES

Conn. Gen. Stat. § 46a-82 ........................................................................................ 17
Conn. Gen. Stat. § 52-577........................................................................................ 35

## RULES

Fed. R. Civ. P. 56(a) ................................................................................................. 9

## TREATISES

Restatement (Second) of Torts § 46.......................................................................... 35
Restatement (Second) of Torts § 593........................................................................ 21
Restatement (Second) of Torts § 596........................................................................ 22
Restatement (Second) of Torts § 652E ..................................................................... 24
W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 12 ................................................. 35

Defendant, Stamford Hospital ("Defendant" or the "Hospital"),   respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## I.   <u>PRELIMINARY STATEMENT</u>

Stamford Hospital terminated the employment of Plaintiff, a Radiologic Technologist, in February 2014, because he failed to follow both the Hospital's patient identification protocol and a written directive from his manager that he do so. He admits that he did not follow these requirements. Because this was Plaintiff's second "Class III" violation within one year, in accordance with applicable policies, Stamford Hospital terminated his employment.

Plaintiff alleges that the real reason Stamford Hospital terminated his employment was because he is male, yet he points to both males and females whom he claims were treated better than him. He claims his female co-worker sexually harassed him, yet the most recent allegation of allegedly unwelcome sexual conduct occurred more than 25 months prior to the filing of his Complaint at the Connecticut Commission on Human Rights and Opportunities ("CHRO"), well beyond the applicable statute of limitations. Plaintiff also alleges his termination was in retaliation for his prior complaints of harassment and discrimination, none of which are sufficiently close in time to establish a prima facie case or to rebut Stamford Hospital's legitimate, nondiscriminatory reason for terminating his employment.

Shortly after Plaintiff's termination, the Hospital learned that Plaintiff had numerous firearm-related pictures on his online Facebook page. These included pictures of  a cache of firearms, including high capacity weapons; of military-grade firearms; of child soldiers carrying firearms; of the aftermath of target practice with a pistol; and of a pistol apparently concealed in a vehicle. In an abundance of caution, the Hospital's security department issued a

1

"Be On the Look Out" (or "BOLO") notice to its department members and a limited number of other Hospital administrators noting Plaintiff's fascination with firearms and stating that if Plaintiff were seen on Hospital property other than as a patient being treated or visiting a patient, he should be instructed to leave. An unknown person mailed a copy of this notice to the Plaintiff, who claims in this lawsuit that it defamed him and invaded his privacy.  The issuance of the BOLO notice to limited personnel for security purposes does not, as a matter of law, support Plaintiff's common-law claims of defamation, invasion of privacy and false light.   The statements contained in the BOLO notice were subject to a qualified privileged, were true and/or were a matter of opinion.  No claims for invasion of privacy or false light will lie where the basis for the statements was Plaintiff's on-line social media posts.

Plaintiff also asserts claims of intentional and negligent infliction of emotional distress. The evidence proffered by Plaintiff does not come close to establishing that he was subjected to "extreme and outrageous" conduct as required to prevail on a claim for intentional infliction of emotional distress, nor has he alleged evidence of any unreasonable conduct in the termination process to support a negligent infliction claim.

Stamford Hospital respectfully submits this memorandum of law in support of its motion for summary judgment on all counts of the Complaint.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff's Employment with Stamford Hospital

Plaintiff, a male, was hired by the Hospital in January of 2009. (Rule 56(a)(1) Statement, ¶¶ 1-2). Throughout his employment, Plaintiff worked as a Radiologic Technologist. (*Id*. at ¶ 3). Radiologic Technologists' duties include, *inter alia*, the use of imaging equipment such as x-ray machines for the purpose of creating diagnostic images of patients. (*Id. at* ¶ 5). The major accountabilities of a Radiologic Technologist include the accurate identification of

patients pursuant to Hospital policy prior to the delivery of patient services. (*Id*. at ¶ 6). From the commencement of his employment until his termination in February 2014, Plaintiff reported to Marjory Vidulich, the Hospital's Administrative Chief, Diagnostic Imaging. (*Id*. at ¶ 7).

### B.     Stamford Hospital's Corrective Action Policy

The Hospital's Corrective Action Policy categorizes disciplinary infractions into four classes.  (*Id*. at ¶ 8). Plaintiff's termination concerned Class III infractions. As explained in the Corrective Action Policy, for the first Class III offense, the Hospital issues the employee a written warning. (*Id*. at ¶ 9) For a second Class III offense committed within one year, the Corrective Action Policy calls for immediate termination. (*Id*. at ¶ 10).[1]

### C.     Stamford Hospital's Patient Identification Policy

Misidentifying patients, i.e., providing medical treatment to the wrong patient, is a significant challenge for healthcare providers, and the subject of National Patient Safety Goals published by the Joint Commission (formerly known as the Joint Commission on Accreditation of Healthcare Organizations. (*Id*. at ¶ 11). Misidentifying patients can compromise patient safety by subjecting patients to inappropriate and unnecessary procedures, as well as the quality of patient care by causing confusion with patients' medical records and delaying services. (*Id*. at ¶ 12). To avoid potentially life-threatening patient misidentification errors, Stamford Hospital requires its staff to follow the Patient Identification Policy to confirm that the right patient is receiving the right service before any medical service is provided. (*Id*. at ¶ 13). Under those procedures, Hospital employees such as Plaintiff must affirmatively verify the identity of a patient prior to the implementation of any care ordered by a physician. (*Id*. at ¶ 14). Ordered care includes a wide variety of procedures and services, including x-ray procedures performed by

---

[1] Several years ago, in a different lawsuit, the court held that the Hospital's termination of a long service employee pursuant to the Corrective Action Policy for having two Class III infractions within one year was a legitimate non-

Radiologic Technologists such as Plaintiff. (*Id*. at ¶ 15). Prior to the delivery of any ordered care, the Hospital requires employees such as the Plaintiff to confirm the patient's name and date of birth. (*Id*. at ¶ 16). Additionally, the Hospital's policy provides that:

> [A]ctive verbal confirmation of the patient's identity, procedure and procedure site should take place prior to interventions being carried out and appropriate verification comparison is completed by comparing the patient's name band with the patient's medical record, medication administration record, *procedure requisition* or physician orders *in the presence of the patient*.

(*Id*. at ¶ 17) (emphasis added).[2]   Departments may set additional requirements concerning employee compliance with patient identification procedures, provided that they are consistent with the Hospital's Patient Identification Policy. (*Id*. at ¶ 19).

### D.     Plaintiff's Discipline and Termination

1.     <u>Plaintiff Failed to Follow Proper Procedure When Performing an X-Ray on a Patient</u>.

On May 4, 2013, Plaintiff failed to follow the Hospital's Patient Identification Policy by performing an x-ray scan on a patient for which no requisition or order had been generated. (*Id*. at ¶ 20). When this occurs, the patient's scan ends up being placed in a different patient's record because there is no corresponding order in the Hospital's system for the scan to be placed in. (*Id*. at ¶ 21). Thus, in this instance, there was no record of the patient having received the scan.  When the order to administer the scan was subsequently issued, he underwent a second, unnecessary, scan thereby needlessly exposing him to additional radiation.  Because the scan went into the wrong patient file, that patient's care was delayed since, based on the records, it appeared the patient's scan had already been administered, when it had not.  (*Id*. at ¶ 22). Plaintiff admits that he made this error with respect to scanning the patient. (*Id*. at ¶ 23). As

---

discriminatory reason for termination. *See Aiello v. Stamford Hospital*, 2011 U.S. Dist. LEXIS 87121 (D. Conn. Aug. 8, 2011), *aff'd*, 487 Fed. Appx. 677 (2d Cir. 2012).

[2] Requisitions are documents that contain patient information and details of the specific procedure to be performed. (*Id*. at ¶ 18).

Plaintiff testified at his deposition: "…I went ahead and mismatched the patient for room five and shot room 13 without a digital order. I was partially distracted, I definitely committed an error…" (*Id*. at ¶ 24).  This error would not have occurred had Plaintiff followed the patient identification protocols because, had Plaintiff used a requisition, the patient scan would not have been misfiled in another patient's record. (*Id*. at ¶ 25). Plaintiff also left for the day without ensuring that the correct scan was in the correct patient record. (*Id*. at ¶ 26).

Pursuant to the Hospital's Corrective Action Policy, Plaintiff's actions constituted a "[f]ailure to meet or maintain acceptable job performance standards not addressed by a Performance Improvement Plan," a Class III infraction, which resulted in the Hospital issuing him a written warning on May 24, 2013. (*Id*. at ¶ 27). The written warning expressly directed Plaintiff to use patient requisitions when identifying patients. (*Id*. at ¶ 28).

2.     <u>Plaintiff Again Failed to Follow Patient Identification Procedures.</u>

On February 14, 2014, Ms. Vidulich observed Plaintiff in the Intensive Care Unit using a handwritten list of patient names and numbers—rather than the official, Hospital-generated patient requisitions—to identify the patients and the ordered care to be performed on them. (*Id*. at ¶ 29). Scanning patients without using requisitions is a failure to follow Hospital identification policies and procedures, as well as a direct violation of the express instructions Plaintiff had been given in his previous warning just eight months earlier. (*Id*. at ¶ 30). Ms. Vidulich recovered the handwritten list of names and numbers Plaintiff was using and reported what she had observed to Marci Paulk, the Director of Radiology. (*Id*. at ¶ 31).

Ms. Paulk and Ms. Vidulich met with Plaintiff who confirmed that he had been using a handwritten list in place of the patient requisitions as required by policy and as he had been specifically instructed to do following the prior policy violation.  (*Id*. at ¶ 32).  According to Plaintiff, he was cross checking his handwritten list against an electronic requisition on a

5

computer by the nurse's station. (*Id*. at ¶ 33). While the Patient Identification Policy allows for the use of either a paper or electronic requisition, it specifically requires that the review of the requisition occurs "in the presence of the patient," which Plaintiff was not doing.  (*Id*. at ¶ 34). Based on his admitted violation of patient identification procedures, as well as the specific directive in his previous disciplinary warning, Ms. Vidulich and Ms. Paulk determined that Plaintiff had committed another Class III infraction under the Hospital's Corrective Action Policy, his second within a year. (*Id*. at ¶ 35). Pursuant to the Hospital's Corrective Action Policy, which provides that two Class III infractions "within a year will result in termination," the Hospital terminated Plaintiff's employment on February 27, 2014. (*Id*. at ¶ 36).

E.     The "Be On the Look Out" Notice

The Hospital has a standard practice of providing "Be On the Look Out" ("BOLO") notices when it becomes aware of individuals, whether patients or former employees, that it believes may present security concerns. (*Id*. at ¶ 37). When BOLO notices are issued, they are provided to security personnel and certain administrators on a "need to know" basis. (*Id*. at ¶ 38). Employees who receive the BOLOs are not authorized to share that information with others without a need to know. (*Id*. at ¶ 39).

Within two weeks of Plaintiff's termination, an employee came to Joseph Hines, the Hospital's Director of Safety and Security, expressing concern that Plaintiff had posted numerous pictures of firearms on his Facebook page. (*Id*. at ¶ 40). Mr. Hines reviewed Plaintiff's public Facebook page and saw pictures of a cache of firearms, including high capacity weapons; of military-grade firearms; of child soldiers carrying firearms; of the aftermath of target practice with a pistol; and of a pistol apparently concealed in a vehicle. (*Id*. at ¶ 41). At his deposition, Plaintiff admitted to having posted each of the pictures that Mr. Hines viewed on his Facebook

account. (*Id*. at ¶ 42).[3] Mr. Hines also viewed at least one post by Plaintiff mentioning "haters" or words to that effect that, although not an overt threat, he viewed as possibly threatening in nature toward personnel at the Hospital. (*Id*. at ¶ 44).

As a result, Mr. Hines created a BOLO notice concerning Plaintiff, which contained his picture, a description of his physical appearance, certain descriptive statements about him, including his enthusiasm for firearms, and instructions for security personnel should they see Plaintiff at the Hospital other than as a patient or visitor of a patient. (*Id*. at ¶ 45). The BOLO also specifically noted that Plaintiff had not made any threats. (*Id*. at ¶ 46). This BOLO notice was distributed by Mr. Hines only to his security staff; his manager Elaine Guglielmo, Vice President of Human Resources and Organizational Development; Evena Williams, Senior Human Resources Partner; and Kathy Silard, Chief Operating Officer. (*Id*. at ¶ 47).

## F.    Plaintiff's Complaints About Laura Martinelli

### 1.    "Touching" Incident in December of 2011.

More than two years before the termination of Plaintiff's employment, his co-worker, Katie Costello, Lead Technologist, reported to Ms. Vidulich that on or about December 23, 2011, she had witnessed co-worker Laura Martinelli, Radiologic Technologist, walk up behind Plaintiff and slap or grab his buttocks while Plaintiff was filling out paperwork at a counter. (*Id*. at ¶ 48). Ms. Vidulich investigated promptly. (*Id*. at ¶ 49).  She interviewed Ms. Martinelli, who admitted to touching Plaintiff inappropriately.[4] (*Id*. at ¶ 50). Ms. Vidulich reported the incident to Cindy DeMuro, the Hospital's Senior Human Resources Partner. (*Id*. at ¶ 53). Soon after, Ms. Vidulich, Ms. Costello, Ms. DeMuro (via telephone) met with Plaintiff about the incident. (*Id*. at ¶ 54). They shared the findings of the investigation, namely, that Ms.

---

[3] Plaintiff also admitted at his deposition that he had made posts to his online Twitter account that depicted or referenced firearms. (*Id*. at ¶ 43).

Martinelli had been found to have engaged in inappropriate behavior toward him, and asked Plaintiff about his thoughts on an appropriate outcome. (*Id*. at ¶ 55). In this lawsuit, Plaintiff claims he asked them what they would have done if a male had engaged in the same conduct, but acknowledges that, at the time, he did not request that any specific action such as termination be taken against Ms. Martinelli. (*Id*. at ¶ 56). Stamford Hospital thereafter suspended Ms. Martinelli for three days without pay. (*Id*. at ¶ 57). The week after the incident, Plaintiff requested, and was granted, a transfer to a different shift. (*Id*. at ¶ 58). Following this transfer, Plaintiff testified that he "barely" saw Ms. Martinelli at work. (*Id*. at ¶ 59).

2.  "True Colors" Class in July of 2012.

During the summer of 2012, the Radiology Department offered "True Colors" training classes to its employees. (*Id*. at ¶ 60). The objective of this training is to help employees to work harmoniously with their co-workers who have different personality types that are referred to as different "colors." (*Id*. at ¶ 61). While Plaintiff was attending a True Colors class on July 12, 2012—more than six months after the prior incident—he claims that Ms. Martinelli made inappropriate comments directed toward him, including references to her "touching" and "grabbing" things. (*Id*. at ¶ 62). Plaintiff emailed Katie Costello to complain about Ms. Martinelli's alleged comments. (*Id*. at ¶ 63). Ms. Costello, in turn, informed Ms. Vidulich of Plaintiff's complaint. (*Id*. at ¶ 64). Once again, Ms. Vidulich investigated Plaintiff's concerns. (*Id*. at ¶ 65). She spoke to the instructor of the class, who told her that she had not noticed any inappropriate comments during the class. (*Id*. at ¶ 66). Ms. Vidulich also interviewed Ms. Martinelli, who admitted saying something to the effect that she liked to "touch things," but explained that it was in the context of a discussion of the "color" of her personality, not at all

---

[4] Plaintiff also claims in this lawsuit that Ms. Martinelli touched his genitalia during this incident. (*Id*. at ¶ 51). He did not make that specific claim in 2011. (*Id*. at ¶ 52).

related to Plaintiff.   (*Id*. at ¶ 67). Based on this, Ms. Vidulich believed there had been a misunderstanding, and concluded that the situation did not warrant any disciplinary action. (*Id*. at ¶ 68).

      3.    <u>Ms. Martinelli Was Impolite To Plaintiff in February of 2014</u>.

More than a year and a half after the "True Colors" meeting, on February 14, 2014 (and more than two years after the first incident), Plaintiff was in a room in the Emergency Department with two of his co-workers, John Geni and Lewis Pierpoint. (*Id*. at ¶ 69). Ms. Martinelli opened the door, leaned into the room and, not yet seeing that Plaintiff was in the room, greeted both Mr. Geni and Mr. Pierpoint. (*Id*. at ¶ 70). Ms. Martinelli then noticed that Plaintiff was also in the room and made a momentary "gagging" noise before leaving the room. (*Id*. at ¶ 71). Plaintiff walked to Ms. Vidulich's office and complained to her and Ms. Costello about the "unprofessional" incident. (*Id*. at ¶ 72). Ms. Vidulich again promptly investigated Plaintiff's complaint, speaking with Ms. Martinelli, as well as Mr. Pierpoint, about the incident. (*Id*. at ¶ 73). Ms. Vidulich concluded following her investigation that Ms. Martinelli had been impolite to Plaintiff, but that her behavior did not justify taking formal disciplinary action. (*Id*. at ¶ 74).

## III. <u>ARGUMENT</u>

### A. **Summary Judgment Standard**

Summary judgment is appropriate where there are no genuine disputes concerning any material fact, and the moving party is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(a).  It should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Failure of proof concerning an essential element of the nonmoving party's case "necessarily renders all

other facts immaterial." *Davis v. Liberty Mut. Ins. Co.*, 218 F. Supp 2d 256, 260 (D. Conn. 2002) (quoting *Goenaga v. March of Dimes Birth Defect Found.*, 51 F.3d 14, 18 (2d Cir. 1995)).

A party opposing summary judgment must provide admissible evidence and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Gan v. City of N.Y.*, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). Further, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). He must offer "concrete evidence from which a reasonable juror could return a verdict in his favor . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**B.      Summary Judgment Should Be Granted on Plaintiff's Gender Discrimination Claims Because Plaintiff Fails to Set Forth a Prima Facie Case of Gender Discrimination or to Demonstrate That the Reasons for His Termination Were a Mere Pretext for Unlawful Discrimination.**

In the First and Second Count, Plaintiff asserts claims of gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA"). Plaintiff has not alleged any direct evidence of discrimination. In such cases, claims brought pursuant to the Title VII and CFEPA are analyzed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Maietta v. Potter*, 70 Fed. Appx. 28 (2d Cir. 2003); *DOT v. Commission on Human Rights and Opportunities*, 272 Conn. 457, 464 (2005). To establish a prima facie case of discrimination, Plaintiff must show: "(i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination." *Collins v. New York City Trans. Auth.*, 305 F.3d 113, 118 (2d Cir. 2002) (internal citations omitted).

Once a plaintiff establishes a prima facie case, the burden shifts to a defendant to produce a legitimate, non-discriminatory reason for its actions. *James v. New York Racing Assoc.*, 233 F.3d 149, 154 (2d Cir. 2000). A defendant's burden of producing a legitimate, non-discriminatory reason for terminating a plaintiff is not arduous. The "burden on the defendant is light, as it need not persuade the court that it was actually motivated by the proffered reasons." *Ortiz v. Prudential Ins. Co.*, 94 F. Supp. 2d 225, 234 (D. Conn. 2000) (citation and internal quotation marks omitted).[5]

1.   Plaintiff Has Failed to Establish a Prima Facie Case of Gender Discrimination under McDonnell Douglas Because He Cannot Establish That The Circumstances of His Termination Give Rise to An Inference of Discrimination.

Plaintiff has not claimed that he has ever heard decision-makers make comments derogatory of his gender or other evidence of treatment that is gender-based. Plaintiff's gender claim appears to be a conclusory claim that the Hospital generally treated women better than men. The only evidence of allegedly differential treatment that Plaintiff points to is a list of individuals who, he claims, committed similar or worse violations than he did and were not subject to similar discipline.[6] (*See* Pl's Responses to Interrogatories, pp. 14-16, attached to Rule 56(a)(1) Statement as Exhibit I ("Pl's Responses to Interrogatories"); Deposition of Jose Leston,

---

[5] Courts in Connecticut interpret antidiscrimination statutes in accordance with federal antidiscrimination laws. *See Curry v. Allan S. Goodman, Inc.*, 286 Conn. 390, 407-408 (2008). As such, Connecticut courts routinely apply federal jurisprudence in cases asserting claims under CFEPA. *See Jackson v. Water Pollution Control Auth.*, 278 Conn. 692, 705-709 (2006) (applying federal jurisprudence in disability case); *Levy v. Commission on Human Rights & Opportunities*, 236 Conn. 96, 103-103 (1996) (same); *Wroblewski v. Lexington Gardens, Inc.*, 188 Conn. 44, 53 (1982) ("confirm[ing] our legislature's intention 'to make the Connecticut [antidiscrimination] statute coextensive with the federal'").

[6] Plaintiff also offered vague allegations of being discouraged from calling out due to weather in a way that female employees were not. However, when asked at his deposition if he ever was told he could not call out due to weather, Plaintiff responded evasively with an unresponsive anecdote about being asked for a doctor's note when he was out of work. When asked again, Plaintiff responded vaguely that he had been told by Ms. Vidulich that he was creating a "hardship for the department," but then when pressed, stated "I've never called out due to weather." (Leston Dep., pp. 146-148).

11

pp. 145, 170-179, excerpts attached to Defendant's Rule 56(a)(1) Statement as Exhibit ("Leston Dep.")).

For Plaintiff to rely on such a list, he must at least "provide an objectively identifiable basis for comparability between h[im]self and other employees" and "[c]onclusory statements that 'similarly situated' employees outside the protected class were treated more favorably are not sufficient to defeat summary judgment." *Id.* (internal quotation marks and citation omitted). *Aiello v. Stamford Hospital*, 2011 U.S. Dist. LEXIS 87121, at *40-41 (D. Conn. Aug. 8, 2011). "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and disciplinary standards and (2) engaged in comparable conduct," which was known to the employer. *Ruiz v. County of Rockland*, 609 F. 3d 486, 493-94 (2d Cir. 2010). "Although the ultimate burden in making a *prima facie* case is slight, the issue of whether fellow employees are similarly situated is somewhat strict." *Brown v. Middaugh,* 41 F. Supp. 2d 172, 184 (N.D.N.Y. 1999).

The individuals identified by Plaintiff as similarly situated comparators are: (1) Graham Stanwicks (male); (2) Charlotte Kane (female); (3) Ron Simone (male); (4) Pascale Medor (female); (5) Zachary Hasak (male); (6) Angela Cornelio (female); (7) John Geni (male); and (8) Rachael Topper (female). (Pl's Responses to Interrogatories, p. 14-16; Leston Dep., pp. 171-79). Each of these individuals is inappropriate as a comparator, albeit for differing reasons.

Significantly, as is apparent from their names, those on Plaintiff's list—offered to bolster his claim of *gender* discrimination—include *both* men and women. Indeed, fully half of the so-called comparators are males. Plaintiff's mixed gender list contradicts his own assertions of discriminatory treatment on the basis of gender.  "[T]he inclusion of males as individuals who were favored by the employer undermines [Plaintiff's] claim that the adverse employment actions taken against him were the result of his gender." *Aiello v. Stamford Hospital*, 2011 U.S.

Dist. LEXIS 87121, at *43-44 (D. Conn. Aug. 8, 2011) (citing *Hirschberg v. Bank of America, N.A.*, 754 F. Supp. 2d 500, 517 (E.D.N.Y. 2010) (finding that "at least five of the comparators that Defendant allegedly treated more favorably than Plaintiff were also in the protected class" which "undercuts Plaintiff's theory that any difference in discipline between Plaintiff and Anderson for the same conduct was age-based")).

      As to the female employees on Plaintiff's list, none of them were treated more favorably than Plaintiff because they all received discipline in connection with conduct similar to Plaintiff's. (Affidavit of Marjory Vidulich Savino, ¶¶ 37-38, attached to Defendant's Rule 56(a)(1) Statement as Exhibit C ("Vidulich Aff."); Vidulich Aff., Exhibits F-G; Affidavit of Evena Williams, ¶¶ 9-10, attached to Defendant's Rule 56(a)(1) Statement as Exhibit A ("Williams Aff.")); Williams Aff., Exhibit C-D. The women on Plaintiff's list received Class III infractions for the conduct Plaintiff referenced in his Interrogatory responses when identifying them. However, these four women are not appropriate comparators because, unlike Plaintiff, none of them received *two* Class III infractions in the course of one year. (Williams Aff., ¶¶ 9-10; Vidulich Aff., ¶¶ 37-38). Even if he could now present evidence of a female with two Class III infractions, Plaintiff cannot demonstrate that the Hospital was aware of it and failed to take action. *See Aiello v. Stamford Hospital*, 2011 U.S. Dist. LEXIS 87121, at *45 (D. Conn. Aug. 8, 2011) (holding that "[s]ince management was not aware that each of these individuals had either failed to properly record time worked or had imaged a patient without registering or having a script, management could not have engaged in preferential treatment with respect to such individuals") (citing *Hirschberg v. Bank of America, N.A.*, 754 F. Supp. 2d 500, 516-17 (E.D.N.Y. 2010) ("concluding that plaintiff had submitted no evidence that defendant preferentially treated other similarly situated employees as plaintiff had not produced any evidence that the defendant knew or should have known that any of the comparators engaged in

the same conduct"); *see also Elam v. Regions Fin. Corp.*, 601 F.3d 873, 881 (8th Cir. 2010) (co-workers not similarly situated to plaintiff because no evidence supervisors were aware of co-workers' misconduct); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 286 (7th Cir. 1997) (employee's claim of similarly situated employees fails where she did not allege that management was aware of the similar misconduct).

Although Plaintiff has failed to identify similarly-situated employees outside of his protected class who committed two Class III violations that were known to the Hospital, Defendant has proffered evidence establishing that other women were also written up for failure to follow proper patient identification protocols. One of these female employees was terminated under the Hospital's Corrective Action Policy for a second Class III infraction within a year as was Plaintiff. (Williams Aff., ¶ 11; Williams Aff., Exhibit E).

Plaintiff also noted in identifying the individuals he listed as comparators that those individuals were still employed by the Hospital. However, the fact of those individuals' continued employment, even if true, is not inconsistent with the Hospital's Corrective Action Policy, which calls for termination of employment only if there are two Class III infractions within a year whereas these individuals, at most, committed one Class III infraction. (Vidulich Aff., ¶¶ 37-40; Williams Aff., ¶¶ 9-10).

Absent any true comparators, Plaintiff relies upon conjecture and speculation to raise an inference of discriminatory animus to establish his *prima facie* case.    However, "an inference is not a suspicion or a guess.  It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist." *Bickerstaff v. Vassar College*, 196 F.3d 435, 448 (2d Cir. 1999).  (internal citations and quotations omitted).  An inference of discrimination cannot be drawn "from thin air."  *Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998).

14

Plaintiff's termination under the Hospital's Corrective Action Policy does not give rise to an inference of discrimination. Plaintiff admits to the violation that led to his written warning in May of 2013. (Leston Dep., p. 110-11). He also admitted that he thereafter failed to use requisitions as required by policy and as he had been expressly instructed to do in his 2013 written warning. (Leston Dep., p. 71; Vidulich Aff., Exhibit B). *See, e.g., Khan v. Bank of Am.*, 2010 U.S. App. LEXIS 8190 (2d Cir. 2010) (performance errors and behavioral issues are a legitimate non-discriminatory reason); *Chukwurah v. Stop & Shop Supermarket Comp.*, 2009 U.S. App. LEXIS 25818 (2d Cir. November 25, 2009) (poor performance is a legitimate non-discriminatory reason); *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87 (2001) (same).

Under these circumstances, Plaintiff cannot show that his termination of employment gives rise to an inference of discrimination on the basis of his sex.

2. <u>Plaintiff Has Failed to Present Evidence that the Legitimate, Non-Discriminatory Reason for His Termination is Pretextual.</u>

Even if Plaintiff could establish a prima facie case, he has failed to offer evidence to satisfy his ultimate burden of establishing unlawful discrimination based on his gender.

Because the Hospital has articulated a legitimate, nondiscriminatory reason for its employment actions—that Plaintiff committed two Class III infractions within a year—the Hospital is entitled to summary judgment unless Plaintiff can point to admissible evidence that would support, by a preponderance of evidence, a finding of prohibited discrimination. *Faria v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001) (citation omitted).

Both of Plaintiff's infractions are undisputed. He admitted his error as to the first incident and, as to the second, admitted using a handwritten list in place of the official requisitions. However, at Plaintiff's deposition, he attempted to justify his actions by claim that the use of requisitions was not the best practice for patient identification. (Leston Dep., pp. 71-

72). It is not, however, the province of an employee simply to ignore a hospitals established protocols in this regard.  The reason for requiring employees to use requisitions in the presence of a patient is to prevent potentially life-threatening patient identification errors. A reliance on handwritten lists and checking patient information at a nurse's station outside of a patient's room in lieu of using the official Hospital requisition in the presence of the patient is in direct conflict with that goal.

While Plaintiff appeared to question that practice at his deposition, it is undisputed that the use of requisitions was an established policy and directive of his management. Plaintiff's disagreements as to the sufficiency of the reason for his termination are inadequate to establish that his termination was pretext for unlawful gender discrimination. *See, e.g., Burgos v. Sullivan & Cromwell*, 2001 U.S. Dist. LEXIS 8412, at *27 (S.D.N.Y. June 25, 2001) (finding no support for pretext and granting summary judgment, observing "Plaintiff simply disagrees with [defendant's] policy . . . Whatever the merits of [defendant's] policies, plaintiff offers no evidence that [defendant's] policies were not the real reason for its actions"); *Ekhato v. Rite Aid Corp.*, 2012 U.S. Dist. LEXIS 119496, at *26 (E.D. La. Aug. 23, 2012) (granting summary judgment where employee relied, *inter alia*, "on instances where she simply disagrees with the policies or decisions" of the defendant's management).

In essence, Plaintiff claims nothing more than that he was a male who was terminated for admittedly violating published hospital patient identification procedures on two occasions within a year.  Plaintiff's feelings and perceptions of being treated differently on account of his gender are insufficient to establish pretext. *See Khan v. Bank of Am., N.A.,* 372 Fed. Appx. 216, 218 (2d Cir. 2010) (plaintiff's gut feeling insufficient to raise a genuine issue of material fact regarding pretext); *Grady v. Affiliated Cent.*, 130 F.3d 553, 558-59 (2d Cir. 1997) (affirming summary judgment of trial court decision finding that, even taken together with other

evidence, "plaintiff's perception of discrimination" was insufficient to create a genuine issue of material fact). Plaintiff admits that he was not using requisitions to identify patients as was required by the Hospital's policy and as he had been instructed to by Ms. Vidulich in his previous written warning. (*See* Leston Dep., p. 71-72; Vidulich Aff., ¶ 16; Vidulich Aff., Exhibit B). There is therefore no dispute that Plaintiff committed two Class III infractions within a year. He has not produced any evidence that would establish that the Hospital's termination of his employment was a pretext for gender discrimination.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's gender discrimination claims.

## C. Summary Judgment Should Be Granted on Plaintiff's Sexual Harassment Claims Because they are Untimely.

In the First and Second Counts, Plaintiff alleges that he was sexually harassed by Laura Martinelli. However, the most recent incident in which Plaintiff claims he was subjected to unwelcome sexual conduct was Ms. Martinelli's allegedly inappropriate innuendo during a training class on July 12, 2012. (Leston Dep., p. 130; Vidulich Aff., ¶ 27).[7] This claim fails as a matter of law because no allegedly sexually harassing conduct occurred within the applicable limitations period.

Under CFEPA, complaints of discriminatory or harassing conduct must be filed with the CHRO within 180 days of the alleged conduct. *See* Conn. Gen. Stat. § 46a-82 ("Any complaint filed pursuant to this section must be filed within one hundred and eighty days after the alleged act of discrimination"). Under Title VII, where a state has a Fair Employment Practices (FEP) agency, such as the CHRO, plaintiffs must file a charge with the EEOC within

---

[7] Plaintiff also alleges in his Complaint that Ms. Martinelli engaged in inappropriate joking of a sexual nature, but when asked at his deposition to provide specific examples, Plaintiff testified only to alleged incidents that he acknowledges occurred prior to the December 2011 incident that led to her disciplinary suspension. (Leston Dep., pp. 125; 143).

300 days of the occurrence of the conduct complained of. Plaintiff did not file a complaint with the CHRO raising claims of alleged sexual harassment until August 25, 2014 (*see* CHRO Complaint, Rule 56(a)(1) Statement, Exhibit J), more than 25 months after the "True Colors" training class and more than 32 months after the incident in which Ms. Martinelli had inappropriately touched him.[8] Accordingly, Plaintiff's sexual harassment claims under CFEPA and Title VII are barred by the applicable statutes of limitations. Defendant is therefore entitled to summary judgment on those claims.

> **D.      Summary Judgment Should Be Granted on Plaintiff's Retaliation Claim Because Plaintiff Cannot Establish a Causal Connection Between Any Protected Activity and His Termination or Otherwise Show that the Reasons for His Termination Were Pretextual.**

In the First and Second Counts, Plaintiff asserts claims of retaliation in violation of Title VII and CFEPA. As in claims of discrimination, courts apply the *McDonnell Douglas* burden-shifting framework to claims of retaliation under Title VII and CFEPA. To demonstrate a prima facie case of retaliation, Plaintiff must establish "i) participation in a protected activity known to the defendant; ii) an employment action disadvantaging the plaintiff; and iii) a causal connection between the protected activity and the adverse employment action." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir. 1995); *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004); *see also Hebrew Home & Hosp., Inc. v. Brewer*, 92 Conn. App. 762, 770 (Conn. App. Ct. 2005) (applying the same test with respect to establishing a prima facie case of retaliation under CFEPA); *Marasco v. Connecticut Regional Vocational-Technical School System*, 2012 Conn. Super. LEXIS 2572, at *19 (Conn. Super. Ct. Oct. 15, 2012) (same).

---

[8] Even if Plaintiff had timely filed claims with respect to those issues, his claims would still fail because an employer is only liable for sexually harassing conduct of non-managerial employees only if it knew of the conduct and failed to act. *Burns v. City of Utica*, 590 Fed. Appx. 44, 47 (2d Cir. 2014) (citing *Petrosino v. Bell Atl.*, 385 F.3d 210, 225 (2d Cir. 2004). Here, the Hospital investigated both of the incidents in which allegedly inappropriate conduct had occurred.  It took appropriate remedial action as to the first incident and, as to the second, was not able to substantiate his claims of some comments at the True Colors meeting.

1.   <u>Plaintiff's Complaints Regarding the December 2011 and July 2012 Incidents are Too Temporally Remote to Establish a Prima Facie Case.</u>

Plaintiff has failed to set forth a prima facie case of retaliation due to the absence of any evidence tending to establish a causal connection between any protected activity and the termination of his employment. The most recent complaint of allegedly unwelcome sexual conduct—namely, the allegedly inappropriate comments during the True Colors class in July 2012—occurred more than 19 months prior to the termination of Plaintiff's employment.[9] This exceedingly lengthy passage of time is insufficient under the precedent of this Circuit to establish a causal connection between protected activity and an adverse employment action. *See Petyan v. New York City Law Department*, 2015 U.S. Dist. LEXIS 53380 (S.D.N.Y. Apr. 23, 2015) (noting on a motion to dismiss a general requirement in the Second Circuit that the temporal nexus between protected activity and adverse action must be three months or less to establish a causal connection); *Jackson v. New York State Office of Mental Health*, 2012 U.S. Dist. LEXIS 165876 (S.D.N.Y. Nov. 15, 2012) (observing on motion to dismiss that six month passage of time from protected activity is insufficient to establish causation as a matter of law). Given that Plaintiff's alleged protected activity took place approximately 19 months prior to his termination, he cannot establish the requisite causal connection between that activity and his termination sufficient to set forth a *prima facie* case of retaliation. For this reason alone, Defendant is entitled to summary judgment on those claims.

---

[9] Plaintiff complained about Martinelli's unprofessional "gagging" sound in February 2014. While this conduct, if true, was rude, no reasonable person could believe it was unlawful. While a plaintiff need not establish that the conduct complained of was in fact a violation of the law, in order for a complaint to constitute protected activity, a plaintiff must establish a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Manoharan v. Columbia U. Col. Of Phys & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988). Mere rudeness is not, and could not in good faith or reasonably be construed to be, discrimination or unlawful harassment, particularly when the interaction in question is the first issue Plaintiff had experienced in connection with Ms. Martinelli in more than <u>19</u> months.

2. <u>Plaintiff Has Failed to Proffer Evidence Raising an Issue of Fact as to the Truthfulness of Defendant's Legitimate, Non-Discriminatory Reason for His Termination.</u>

Even if he can establish a prima facie case, Plaintiff cannot defeat summary judgment as he cannot, as a matter of law, sustain his burden to prove that the reasons for his termination were a mere pretext for unlawful retaliation for substantially the same reasons that he cannot prove that his termination was pretext for sex discrimination. *See* Section B(1), *supra*. Plaintiff failed to follow Hospital Patient Identification Policy procedures on two separate occasions within a one year period, and was therefore terminated under the Hospital's Corrective Action policy. For the reasons outlined above, Plaintiff's excuses for his acknowledged failure to follow Hospital policy and the directive to use requisitions when identifying patients are insufficient to rebut Defendant's legitimate non-discriminatory reason for his termination.

Additionally, to prevail on a cause of action for unlawful retaliation under Title VII, Plaintiff must meet a heightened burden to prove that his protected activity was not just "a" cause, but was the "but-for" cause of his termination. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2532-33 (2013); *see also Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176 (2009) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) (explaining that the claim "cannot succeed unless the employee's protected trait actually played a role in [the employer's decisionmaking] process and *had a determinative influence on the outcome*.") (emphasis added)). This standard requires "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 133 S. Ct. at 2533. Under the circumstances presented in this case, Plaintiff cannot, as a matter of law, establish that he would not have been terminated but-for his engagement in protected activity. Such a claim is not only belied by the legitimate, nondiscriminatory reason the Hospital has provided for his termination, but also Plaintiff's assertion that gender discrimination was the true

20

reason for the termination of his employment. *See Aiello v. Stamford Hospital*, 2011 U.S. Dist. LEXIS 87121, at *54 (D. Conn. Aug. 8, 2011) (noting that the plaintiff's "allegations that the adverse employment actions that Defendant took against him were also motivated by his gender undermines his ability to demonstrate that age was the 'but for' cause behind his employer's adverse decision").

Accordingly, Defendant is entitled to summary judgment on the First and Second Counts of the Complaint asserting claims of unlawful retaliation.

**E.      Summary Judgment Should Be Granted on All Common-Law Claims Arising out of the Limited Publication of the BOLO Notice.**

In the Third, Fourth, Fifth, and Sixth Counts of his Complaint, Plaintiff asserts common law tort claims of libel per se, libel, publicity of private facts and false light, respectively. These claims are all exclusively based upon the content of the BOLO notice issued by the Hospital following the termination of Plaintiff's employment. (Plaintiff Dep., p. 151). For the reasons set forth more fully below, Plaintiff has failed to raise a triable issue of fact and summary judgment should be granted on each of those counts.

1.      The BOLO Notice Was Protected by a Qualified or Conditional Privilege.

In the Third, Fourth, Fifth, and Sixth Counts, Plaintiff claims that the BOLO notice, particularly the reference to his "fascination with firearms," was libelous and/or that it violated his privacy. Without in any way conceding that any statements were libelous or otherwise unlawful, Defendant cannot be held liable for the limited publication of the BOLO notice because that publication is subject to a conditional privilege. "One who publishes defamatory matter concerning another is not liable for the publication if (a) the matter is published upon an occasion that makes it conditionally privileged and (b) the privilege is not abused." Restatement (Second) of Torts § 593. A conditional privilege protects false statements

21

that are not made maliciously. *See Hassett v. Carroll*, 85 Conn. 23, 35-36 (1911) ("One publishing defamatory words under a qualified or conditional privilege is only liable upon proof of express malice"); *Gleason v. Smolinski*, 319 Conn. 394, 432 (Conn. 2015) ("Qualified privileges may be defeated by a showing, by a preponderance of the evidence . . . of actual malice, also known as constitutional malice, or malice in fact). "An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know." Restatement (Second) of Torts, § 596. "The essential elements of [a qualified privilege] defense are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion and publication in a proper manner to proper parties." *Decker v. Martin*, 2010 Conn. Super. LEXIS 168, at *15 (Conn. Super. Ct. Jan. 19, 2010). Additionally,  "[a] qualified or conditional privilege arises out of an 'occasion,' such as, when one acts in the bona fide discharge of a public or private duty." *Miles v. Perry*, 11 Conn. App. 584, 594, n.8 (Conn. App. Ct. 1987).

Here, Defendant's publication of the BOLO notice is subject to a qualified or conditional privilege because Defendant and its security personnel and handful of high level administrators—the Chief Operating Officer, Vice President of Human Resources and Organizational Development and the Senior Human Resources Partner—carry a common interest in ensuring the safety of Defendant's patients and employees. The Hospital's interest in issuing BOLOs such as the one found in this case cannot be overstated as every year more examples occur of workplace violence and troubled individuals with access to firearms entering public places with the intent to do harm to others. Claims involving the public's safety cannot be viewed in a legal vacuum, as the examples in the public record demonstrate that organizations such as Defendant must remain vigilant in looking after the safety of its employees and those it

22

serves. In this case, Defendant issued the BOLO notice when an employee was sufficiently concerned about Plaintiff's postings of firearms on Facebook to bring them to the attention of Defendant's Head of Security, Joseph Hines. (Affidavit of Joseph Hines, ¶ 7, attached to Defendant's Rule 56(a)(1) Statement as Exhibit F ("Hines Aff.")). After personally reviewing the posts, Defendant exercised its reasoned judgment that, in the interest of the safety of its patients and employees, it had to take some measured preventative steps. There is no evidence in the record tending to suggest that the BOLO notice was issued with malice or spite, as Mr. Hines, *who did not know Plaintiff, nor had he ever personally met or spoken to him*, made a decision in good faith that issuing a BOLO notice concerning Plaintiff would further Stamford Hospital's legitimate interest in ensuring the safety of its patients and employees. (Hines Aff., ¶¶ 8, 11). The Hospital cannot be expected to bury its head in the sand and ignore a potentially threatening situation involving a former employee. Because, unlike at many secure corporate settings, members of the public come and go from the Hospital on a daily basis, the BOLO notice is an effective tool to alert security and other key administrative personnel to potentially threatening situations. *See, e.g., Sweet v. Tigard-Tualatin Sch. Dist.*, 124 Fed. Appx. 482, 487-88 (9th Cir. 2005) (granting summary judgment to school district on defamation claims based on qualified privilege where principal had sent emails to staff expressing potential concern for their safety concerning former employee).

Accordingly, Defendant is entitled to summary judgment on Plaintiff's defamation and invasion of privacy claims because the publication of the BOLO notice to limited personnel with a "need to know" is subject to a qualified or conditional privilege, and Plaintiff has not presented admissible evidence upon which a trier of fact could find that Defendant acted with malice.

2. Plaintiff's Libel Per Se, Libel and False Light Claims Must Fail Because the Statements in the Hospital's BOLO Notice Were True.

In Counts Three, Four and Sixth, Plaintiff purports to assert claims of libel per se, libel and false light. The Hospital is entitled to summary judgment on these claims because the undisputed evidence reveals that any allegedly defamatory statements were true..

"A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. . . . To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Hopkins v. O'Connor*, 282 Conn. 821, 838, 925 A.2d 1030 (2007) (internal quotation marks omitted). "To prevail on a common-law defamation claim, [the] . . . plaintiff must prove that the defendant published *false* statements about [him] *that caused pecuniary harm.*" *Daley v. Aetna Life & Casualty Co.*, 249 Conn. 766, 795 (1995) (emphasis added).

The falsity of a statement is also a requirement for the establishment of a common law false light claim. Connecticut has adopted the definition of false light invasion of privacy contained in the Restatement (Second) of Torts, § 652E (1997), which provides: "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." "The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true . . . and (2) is such a major misrepresentation of

24

his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." *Jonap v. Silver*, 1 Conn. App. 550, 557-58 (Conn. App. Ct. 1984).

Defendant is entitled to summary judgment on Plaintiff's defamation and false light claims because Plaintiff cannot adduce evidence that the statements contained in the BOLO notice were false. In claims of defamation, the plaintiff "bears the burden of demonstrating that the [defendant] made certain representations . . . that were in fact untrue." *Daley*, 249 Conn. at 792-93. "[O]nly *substantial* truth need be shown to constitute the justification . . . It is not necessary for the defendant to prove the truth of every word . . . [It is sufficient to] prov[e] that the main charge, or gist, of the libel is true . . ." *Mercer v. Cosley,* 110 Conn. App. 304 (Conn. App. Ct. 2008) (Emphasis added; internal quotation marks omitted).

Under the circumstances, Plaintiff cannot satisfy that burden in this case. The sole statement in the BOLO notice that Plaintiff claims was false was the statement that Plaintiff has a "strong fascination with firearms." (Leston Dep., p. 159). Even on that point, Plaintiff essentially quibbles with Defendant's use of the term "fascination" to describe his interest in firearms, apparently taking the position that the issue is a matter of degree rather than falsity. (Leston Dep., p. 157). Indeed, at his deposition, Plaintiff did not seriously appear to disagree that the term "fascination" can be a matter of degree, stating: "Well, fascination, you know, definitely is a tricky thing because I could – you know, I like hamburgers, I'm not fascinated with them." (Leston Dep, p. 157). Merriam Webster defines "fascinate," in relevant part as "to command the interest of."[10]   On this record, Plaintiff cannot seriously dispute that, based on his social media postings, he had exhibited what could reasonably be described as a "fascination" with firearms. The basis for Defendant's statement was over a dozen online postings of pictures of a variety of

firearms by Plaintiff on his Facebook page. (Hines Aff., ¶ 9; Hines Aff., Exhibit A; Leston Dep., pp. 162-170). These postings included pictures of child soldiers, pictures of large volumes of military-grade weaponry, the aftermath of Plaintiff's target practice with a pistol, and the apparent concealment of a pistol belonging to Plaintiff in his vehicle. (Hines Aff., ¶ 9; Hines Aff., Exhibit A; Leston Dep., pp. 162-170).[11] Plaintiff also testified that he owns two guns and is a member of the National Rifle Association. (Leston Dep., p. 160).

Under these circumstances, no reasonable trier of fact could conclude that Defendant's statement concerning Plaintiff's "fascination" with firearms was not substantially true, much less that it was false. Moreover, the statement was quickly followed with the statement that he had not engaged in any actual threats.  As such, Plaintiff's libel per se, libel, and false light claims must fail as a matter of law and Defendant is entitled to summary judgment on the Third, Fourth, and Sixth Counts of the Complaint.

3.    <u>Plaintiff's Libel Per Se and Libel Claims Must Fail Because the Statements in the Hospital's BOLO Notice Were Protected Opinion.</u>

Even if Defendant's description of Plaintiff's fascination with firearms as "strong" was not a true fact, such a description constitutes the expression of protected opinion. "An opinion . . . is a personal comment about another's conduct, qualifications or character that has some basis in fact." *Savage v. Andoh*, 2013 Conn. Super. LEXIS 309, at *40-41 (Conn. Super. Ct. Feb. 6, 2013). "If [a] defendant bases his expression of a derogatory opinion of the plaintiff on his own statement of facts that are not defamatory, he is not subject to liability for the factual statement—nor for the expression of opinion, so long as it does not reasonably indicate an assertion of the existence of other, defamatory, facts that would justify the forming of the

---

[10] *See* http://www.merriam-webster.com/dictionary/fascinate.
[11] Plaintiff also testified falsely that he had not posted pictures of guns on Twitter, which he had. (Leston Dep., pp. 162, 187; Leston Twitter Feed, pp. 50, 57-58, 62, attached to Defendant's Rule 56(a)(1) Statement as Exhibit G ("Leston Twitter Feed")).

opinion." *Pryor v. Brignole*, 2016 Conn. Super. LEXIS 426, at *13-15 (Conn. Super. Ct. Mar. 8, 2016) (quoting Restatement (Second), Torts §566, comment (c)(2)). "Expressions of 'pure' opinion (those based upon known or disclosed facts) are guaranteed virtually complete constitutional protection." *Goodrich v. Waterbury Republican-American, Inc.,* 188 Conn. 107, 118 (1982); accord *Daley v. Aetna Life & Casualty Co., supra, 249 Conn. 795* ("a defendant cannot be held liable for expressing a mere opinion."); *see also Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), *cert. denied*, 459 U.S. 1226, 103 S. Ct. 1233, 75 L. Ed. 2d 467 (1983) ("[u]nder the First Amendment there is no such thing as a false idea.").

The evidence here establishes that, at the time Defendant issued the BOLO, it was aware, due to the report of an employee, of Plaintiff's posting of numerous images concerning firearms on social media. (Hines Aff., ¶ 9; Hines Aff., Exhibit A). Plaintiff has not denied he posted those images. (Leston Dep., pp. 162-170). Moreover, Defendant qualified its statement regarding Plaintiff's fascination with firearms by specifically noting in the BOLO notice that Plaintiff had not made any threats, which would expressly dispel any false implication that he had done so. (*See* Hines Aff., Exhibit B). As such, Defendant's expression of an opinion that Plaintiff had a "strong" fascination with firearms is based on true facts concerning Plaintiff's actual, admitted behavior.   Under such circumstances, the statements in the BOLO notice constitute a protected matter of opinion which Defendant cannot be held liable for.

Accordingly, Defendant is entitled to summary judgment on the Third and Fourth Counts of Plaintiff's Complaint.

4.  <u>Plaintiff's Libel Per Se and Libel Claims Must Fail Because Plaintiff Cannot Establish a Per Se Defamation Claim or Demonstrate the Existence of Pecuniary Harm.</u>

a.  *The Content of the BOLO Notice Cannot Support a Claim of Libel Per Se.*

Plaintiff cannot establish a claim of libel per se because the BOLO notice, on its face, does not make statements of a character that would provide a valid cause of action. "To recover on a claim that the libel was actionable per se, a plaintiff must show that the libel, *on its face*, either charged some impropriety in the plaintiff's business or profession or that it charged a crime of moral turpitude." *Mercer v. Cosley*, 110 Conn. App. 283, 294-295 (Conn. App. Ct. 2008) (emphasis added) (citing *Miles v. Perry*, 11 Conn. App. 584, 601-602 (Conn. App. Ct. 1987)). "All of the circumstances connected with the publication of defamatory charges should be considered in ascertaining whether a publication was actionable per se. The words used, however, must be accorded their common and ordinary meaning, without enlargement by innuendo." *Miles v. Perry*, 11 Conn. App. at 602-03 (citing *Proto v. Bridgeport Herald Corp.*, 136 Conn. 557, 565 (1950)).

There is no genuine dispute of material fact as to the contents of the BOLO notice. (Hines Aff., Exhibit B). There are no statements in the BOLO that charge plaintiff with any impropriety with respect to plaintiff's business or profession. As to the prong of this cause of action concerning an individual's business or profession, it has been well settled since the early to mid-19[th] century that a libel is only actionable per se if it charges "improper conduct or lack of skill or integrity in one's profession or business and is of such a nature that it is calculated to cause injury to one in his profession or business." *Proto v. Bridgeport Herald Corp.*, 136 Conn. 557, 566-67 (1950) (citing *Herman v. Post*, 98 Conn. 792, 793 (1923); *Pascone v. Morning Union Co*., 79 Conn. 523, 525 (1907)). Written words may also be libelous per se if they charge

an act that is "derogatory to the plaintiff in the operation of his business or in the practice of his profession . . . and if the charge is of such a nature that it is likely to injure the plaintiff in that business or profession." *Proto v. Bridgeport Herald Corp*., 136 Conn. 557, 566-567 (Conn. 1950) (citing *Corsello v. Emerson Bros., Inc*., 106 Conn. 127, 130-31 (1927); *Petrucelli v. Catapano*, 107 Conn. 122, 123 (1927)).

The content of the BOLO notice speaks for itself, and the only language in that notice concerning Plaintiff's employment states that Plaintiff "is a former employee" and that Plaintiff "was an involuntary termination." (Hines Aff., Exhibit B). In addition to being true, and therefore not libelous, neither statement on its face alleges any sort of impropriety with respect to Plaintiff's business or his profession. The statements in the BOLO notice certainly do not amount to an allegation of "general incompetence or lack of integrity" nor are they "derogatory to the plaintiff in the operation of his business or in the practice of his profession." *Proto*, *supra*.

Moreover, the BOLO notice does not contain any statements accusing Plaintiff of any crime—much less a crime of "moral turpitude."[12] On the contrary, it spoke of a fascination with firearms, but also expressly disclaimed any actual threats. Therefore, Plaintiff's libel per se claim must fail. Accordingly, Defendant is entitled to summary judgment on the Third Count of Plaintiff's Complaint.

> b.   *Plaintiff Has Failed to Demonstrate Any Pecuniary Harm Associated with the Publication of the BOLO Notice.*

"With regard to the last element necessary to establish a claim [of defamation], the question of whether a defamed person's reputation has suffered harm is demonstrated by

---

[12] "Moral turpitude . . . is a vague and imprecise term to which no hard and fast definition can be given . . . A general definition . . . is that moral turpitude involves an act of inherent baseness, vileness or depravity in the private and social duties which man does to his [fellow man] or to society in general, contrary to the accepted rule of right and duty between man and law." *Moriarty v. Lippe,* 162 Conn. 371, 382-84 (1972). "The modern view of this requirement is that the crime be a chargeable offense which is punishable by imprisonment." *Battista v. United Illuminating Co.*, 10 Conn.App. 486, 493 (1987), cert. denied, 204 Conn. 802 (1987).

showing whether . . . a significant segment of the community holds the person in lower esteem."
*DeMaio v. Laugeni*, 2013 Conn. Super. LEXIS 609, at *19-20 (Conn. Super. Ct. Mar. 14, 2013)
(quoting *Miles v. Perry*, 11 Conn. App. 584, 604 (1987)). With regard to this his claims of
defamation, Plaintiff has provided no evidence that a significant segment of the community holds
him in lower esteem as a result of the BOLO notice beyond a threadbare recitation of the
elements of a cause of action for libel.[13] In the absence of any proof of such damages, Plaintiff
cannot establish the existence of a dispute of material fact as to his libel claims. For this reason,
Defendant is entitled to summary judgment on the Fourth Count of Plaintiff's Complaint.

5.   <u>Plaintiff's Publicity of Private Facts and False Light Claims Fail Because
Defendant Did Not Give Unreasonable Publicity to the BOLO Notice.</u>

Defendant is entitled to summary judgment on Plaintiff's claim of publicity of
private facts because it did not publicize the BOLO notice. "In order to successfully litigate a
cause of action for giving unreasonable publicity to the plaintiff's private life, the plaintiff must
plead and prove: (1) that the defendant gave publicity; (2) to a matter concerning the private life
of the plaintiff; and, (3) that the matter publicized was of a kind that (a) would be highly
offensive to a reasonable person, and (b) would not be of legitimate concern to the public."
*Meade v. Orthopedic Assocs. of Windham County*, 2007 Conn. Super. LEXIS 3424, at *6-7
(Conn. Super. Ct. Dec. 27, 2007).

Plaintiff's publicity of private facts and false light claims must fail because
Plaintiff cannot establish that Defendant publicized the BOLO notice. Unlike the limited
publication required to state a claim for defamation, the publicity element of an invasion of
privacy claim requires publication of the allegedly false matter to the public at large or to so

---

[13] For instance, when asked about whether prospective employers had any way of knowing about the BOLO notice,
Plaintiff replied: "It's one way or the other, you know, you don't know. I mean, if it's out there in my mailbox, it
can be out there in anybody else's mailbox, I don't know." (Leston Dep., p. 156).

many persons as to make it substantially certain that the matter will become public knowledge. *See Pace v. Bristol Hosp*., 964 F. Supp. 628, 631 (D. Conn. 1997); *Handler v. Arends*, 1995 Conn. Super. LEXIS 660, 1995 WL 107328, *13 (Conn. Super. March 1, 1995). "[P]ublicity is a communication that reaches, or is sure to reach, the public at large." *Handler v. Arends*, 1995 Conn. Super. LEXIS 660, at *24 (Conn. Super. Ct. Mar. 1, 1995). "A cause of action for invasion of privacy will not lie where the defendant did not directly publicize the private facts about the plaintiff even though 'publicity was a natural and foreseeable consequence' of the defendant's actions. *Meade*, 2007 Conn. Super. LEXIS 3424, at *7 (quoting *LaFontaine v. Family Drug Stores, Inc.*, 33 Conn.Sup. 66, 72, 360 A.2d 899 (1976)).

Plaintiff has produced no admissible evidence that could establish that Defendant publicized the BOLO notice. Moreover, the limited disclosure Defendant did make in providing the BOLO notice to its security personnel and three other individuals with a need to know,[14] falls well short of publicizing the BOLO notice in such a manner as to make it substantially certain that it would become public knowledge. *See Handler*, 1995 Conn. Super. LEXIS 660, 1995 WL 107328, *13 (statement to ten of plaintiff's co-workers did not constitute "publicity"); *see also Chertkova v. Conn. Gen. Life Ins. Co.*, 2002 Conn. Super. LEXIS 2348 (Conn. Super. July 12, 2002), aff'd, 76 Conn. App. 907 (2003) (no publication where defendant disseminated allegations to three of plaintiff's subsequent employers). The facts here fall far short of the publicity required to satisfy the requirements of the publicity of private facts tort. Rather, the undisputed evidence establishes that Defendant published the BOLO notice to its security personnel and certain individuals on a "need to know" basis. (Hines Aff., ¶¶ 6, 12). Distribution of the BOLO notice to unauthorized individuals is prohibited. (Hines Aff., ¶ 6). No admissible evidence has

---

[14] As Joseph Hines noted, the BOLO was distributed to Elaine Guglielmo, who is the Hospital's Vice President of Human Resources and Organizational Development; to Evena Williams, Senior Human Resources Partner; and to Kathy Silard, Chief Operating Officer. (Hines Aff., ¶ 12).

been presented that would demonstrate that Defendant took any action to directly publicize the BOLO notice beyond those specific individuals. Accordingly, summary judgment should be granted to Defendant as to the Fifth Count of the Complaint.

6.    <u>Plaintiff's Publicity of Private Facts Claim Fails Because the Facts in the BOLO Were Not Part of Plaintiff's "Private Life."</u>

Even if Plaintiff could prove that Defendant publicized the BOLO notice, the subject of the notice cannot fairly be considered part of Plaintiff's "private life." Therefore, no liability for publicity of private facts can lie.

While the Restatement recognizes that "[e]very individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends[,]" *see Corniello v. Fuzion Med. Aesthetic Boutique, LLC*, 2015 Conn. Super. LEXIS 2264 (Conn. Super. Ct. Aug. 26, 2015), implicit in the concept of information which an individual "does not expose to the public eye" is an understanding that, where in individual does choose to publicly post information, such information is not considered a part of that individuals "private life."

Plaintiff had already publicized the content upon which the Defendant based its issuance of the BOLO, which consisted of over a dozen online postings on Plaintiff's Facebook page depicting firearms, including firearms in the hands of children and a firearm apparently concealed in Plaintiff's own vehicle. (*See* Hines Aff., ¶ 9; Hines Aff., Exhibit A; Leston Dep., pp. 162-170, 187-188). Indeed, the only way Defendant became aware of, or could have become aware of, those pictures was because Plaintiff had posted them on the internet where others could readily discover them. In addition to his posts on Facebook, Plaintiff also posted comments concerning or pictures of firearms to his publicly accessible Twitter page. (*See* Leston Twitter Feed, pp. 50, 57-58, 62). As such, there is no genuine dispute of material fact concerning the fact

that the subject matter of Defendant's BOLO notice had already been publicized by Plaintiff through his own actions. *See, e.g., Doe v. Sotil Tree Serv., LLC*, 2015 Conn. Super. LEXIS 2572, at *8 (Conn. Super. Ct. Oct. 15, 2015) (finding for defendant on invasion of privacy claim where plaintiff had told others about his condition). Plaintiff cannot claim that the BOLO notice's statement concerning his interest in firearms gave publicity to his private life where any person viewing his online postings on social media could have concluded precisely as Defendant did. Defendant is therefore entitled to summary judgment on Fifth Count of the Complaint.

7.   <u>Plaintiff's False Light Claim Must Also Fail Because the Hospital Did Not Have Knowledge of or Act in Reckless Disregard as to Any Alleged Falsity of the Statements in the BOLO Notice, Nor Would Such Statements Permit Serious Offense To Be Taken by a Reasonable Person in Plaintiff's Position.</u>

*a.   The Hospital Did Not Have Knowledge of or Act in Reckless Disregard to Any Alleged Falsity in the BOLO Notice.*

As set forth in Section III(E)(2), the content of the BOLO notice that Plaintiff claims placed him in a false light was factually true. However, even when a plaintiff can prove that a statement about him is false, he must also demonstrate that the individual making the statement "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Jonap v. Silver*, 1 Conn. App. 550, 557-58 (Conn. App. Ct. 1984). Thus, even if Plaintiff could demonstrate that the content of the BOLO notice was false, Plaintiff cannot establish that Joseph Hines, the author of the BOLO notice, either had knowledge that the content of the notice he created was false or that he acted in reckless disregard to the falsity of the content of the BOLO notice. Plaintiff posted numerous pictures of firearms to online social media where others could view them. (*See* Hines Aff., ¶ 9; Hines Aff., Exhibit A; Leston Dep., pp. 162-170, 187-188, Leston Twitter Feed, pp. 50, 57-58, 62). Defendant, having seen such online postings of child soldiers, military-grade hardware, and

33

apparently concealed weapons, cannot be said to have acted with reckless disregard to the truth in stating that Plaintiff has a strong fascination with firearms.

> b.    *The Statements in the BOLO Were Not a Major Misrepresentation of Plaintiff's Character, History, Activities, or Beliefs Such that a Reasonable Person in Plaintiff's Position Could be Expected to Take Serious Offense.*

Plaintiff also cannot show that the information in the BOLO was "such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position"—as he must do to prevail on a claim of false light. *Jonap v. Silver*, 1 Conn. App. 550, 557-58 (Conn. App. Ct. 1984).  The BOLO notice was based upon Plaintiff's own postings to online social media. (*See* Hines Aff., ¶ 9; Hines Aff., Exhibit A; Leston Dep., pp. 162-170, 187-188). Additionally, the BOLO took care to note that Plaintiff had not actually made any threats. (Hines Aff., Exhibit B). Under the circumstances, the BOLO did not misrepresent Plaintiff to any extent, much less in a "major" way such that "serious offense" could reasonably be expected of a person in Plaintiff's position. Accordingly, Defendant is entitled to summary judgment with respect to the Sixth Count of the Complaint alleging false light.

**F.    Summary Judgment Should be Granted on Plaintiff's Claim of Intentional Infliction of Emotional Distress Because Plaintiff Cannot Establish Extreme and Outrageous Conduct.**

To support a claim for intentional infliction of emotional distress, Plaintiff must be able to prove that he was subjected to conduct of an extreme and outrageous character. The allegations of the Seventh Count fail to satisfy the required threshold of severity. Accordingly, Defendant should be granted summary judgment on that count.

To prevail in a case alleging intentional infliction of emotional distress, a plaintiff must demonstrate that "(1) the actor intended to inflict emotional distress; or that he knew or

should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Petyan v. Ellis*, 200 Conn. 243, 253 (1986) (citing *Murray v. Bridgeport Hospital*, 40 Conn. Sup. 56, 62, 480 A.2d 610 (1984); *Hiers v. Cohen*, 31 Conn. Sup. 305, 329 A.2d 609 (1973); 1 Restatement (Second) of Torts, § 46); *see also Appleton v. Bd. of Educ.*, 254 Conn. 205 (2000).

   "Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003) (quoting *Petyan*, *supra*, and W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 12, p. 60). Liability may only be found where the conduct in question "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* (citing 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965)). "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Mellaly v. Eastman Kodak Co.*, 42 Conn. Sup. 17, 19, 597 A.2d 846 (1991). Whether a defendant's conduct as alleged satisfies the extreme and outrageous requirement of the tort is initially a question for the court to determine. *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000) (citing *Bell v. Bd. of Educ.*, 55 Conn. App. 400, 410 (1999)).

   As an initial matter, it should be noted that conduct occurring more than three years prior to the commencement of this action is time-barred for the purposes of Plaintiff's claim of intentional infliction of emotional distress. *See* Conn. Gen. Stat. § 52-577 ("No action

founded upon a tort shall be brought but within three years from the date of the act or omission complained of"). This action was commenced by service of the summons and complaint upon Defendant on July 27, 2015.[15] (*See* Return of Service, Rule 56(a)(1) Statement, Exhibit K). Accordingly, no acts occurring prior to July 27, 2012 may form the basis of a claim of intentional infliction of emotional distress, including, without limitation: (1) Plaintiff's being touched by Laura Martinelli in December of 2011; (2) Defendant's discipline of Laura Martinelli concerning her contact with Plaintiff in December of 2011; and (3) Laura Martinelli's alleged comments at a training session on July 12, 2012.

The evidence proffered by Plaintiff in this case concerning his alleged treatment falls well short of the high thresholds necessary to establish intentional infliction of emotional distress. Here, Plaintiff asserts little more in the three years prior to his termination than that he was treated in a manner that he considered to be more harsh than certain other men and women in Defendant's employ. (Pl's Responses to Interrogatories, pp. 14-16; Leston Dep., pp. 171-79). *See Appleton v. Bd. of Educ.*, 254 Conn. at 211-12 (2000) (teacher forced to undergo psychological examinations did not allege conduct of sufficiently severe and outrageous character); *Parsons v. United Techs. Corp.*, 243 Conn. 66, 89 (1997) (holding that the firing of an employee, even if wrongfully motivated, does not "transgress the bounds of socially tolerable behavior."); *Perodeau v. City of Hartford*, 259 Conn. 729, 757 (2002) ("such individuals should expect to be subject to other vicissitudes of employment, such as workplace gossip, rivalry, personality conflicts, and the like"); *Brown v. Ellis*, 40 Conn. Supp. 165, 167 (Conn. Super. Ct. 1984) ("[M]ere insults, indignities, or annoyances that are not extreme or outrageous will not suffice."); *Tracy v. New Milford*, 101 Conn. App. 560 (Conn. App. Ct. 2007) ("[D]enial of a

---

[15] "In Connecticut, an action is commenced on the date of service of the writ upon the defendant." *Hillman v. Town of Greenwich*, 217 Conn. 520, 527-28 (1991) (quoting *McGaffin v. Roberts*, 193 Conn. 393, 401-02 (1984)).

position, initiating disciplinary actions without proper investigation, defamation of character and intimidation not "extreme and outrageous."); *Heim v. California Federal Bank*, 78 Conn. App. 351, 369-70 (Conn. App. Ct. 2003) (alleged misconduct, including sending a letter to plaintiff containing several falsehoods did not "exceed all bounds tolerated by a decent society"); *Valencia v. St. Francis Hosp. & Med. Ctr.*, 1996 Conn. Super. LEXIS 894, at *23 (Conn. Super. Ct. April 3, 1996) (holding that conduct was not extreme and outrageous where defendant "grabbed plaintiff's arm in front of patients and co-workers, pulled her in a back room and yelled at her"); *Jeffress v. Yale Univ.*, 1997 Conn. Super. LEXIS 2321, at *5-6 (Conn. Super. Ct. Aug. 28, 1997) (striking claim of intentional infliction of emotional distress where plaintiff alleged "a continuous pattern of harassment, humiliation and degradation").

Defendant has thoroughly debunked Plaintiff's claims of gender-based discrimination. Nonetheless, even if Plaintiff's claims were credited by the Court, they are insufficient to establish that he was subjected to conduct that is extreme and outrageous. *See, e.g., Jeffress*, *supra*. Moreover, the fact of Plaintiff's termination does not reach the required threshold, even in light of Plaintiff's claims that it was motivated by discriminatory or retaliatory animus. *See Parsons v. United Technologies Corp.*, 243 Conn. 66, 88-89 (1997) ("The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior.")

Finally, the BOLO notice similarly cannot form the basis of a claim of intentional infliction of emotional distress because, as discussed at length above, it (1) was a privileged communication, (2) was truthful in its content, (3) contained protected opinion, (4) did not give "publicity" to facts about Plaintiff's "private life," and (5) was otherwise reasonable to issue under the circumstances in light of Plaintiff's own admitted online activities. (*See* Section III(E), *supra*).

37

The threshold for establishing the required level of severity to state a claim for intentional infliction of emotional distress is purposefully high, particularly in the employment context. *See, e.g., Perodeau, supra; Gillian v. Vivanco-Small*, 2010 Conn. Super. LEXIS 493, at *8 (Conn. Super. Ct. Mar. 2, 2010) ("Courts have placed a very high burden on those claiming extreme and outrageous conduct"). None of the conduct alleged by Plaintiff meets that threshold.

Accordingly Defendant is entitled to summary judgment on the Seventh Count of the Complaint alleging intentional infliction of emotional distress.

**G.  Summary Judgment Should be Granted on Plaintiff's Claim of Negligent Infliction of Emotional Distress Because Plaintiff Cannot Establish Wrongful Conduct During the Termination Process**

With respect to claims of negligent infliction of emotional distress, employers may only be liable for conduct occurring in the context of an employee's termination of employment. *Perodeau v. City of Hartford*, 259 Conn 729, 762-63 (2002); *see also Jones v. H.N.S. Mgmt. Co.*, 2003 Conn. Super. LEXIS 2704, at *16-17 (Conn. Super. Ct. Sept. 25, 2003) (striking count alleging negligent infliction of emotional distress because conduct did not occur in termination context); *Lucas v. United Illuminating Co.*, 2003 Conn. Super. LEXIS 1546, at *6-7 (Conn. Super. Ct. May 12, 2003) ("[An] employer is not liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, as distinguished from conduct occurring in the termination of employment."); *Grunberg v. Quest Diagnostics, Inc.*, 2008 U.S. Dist. LEXIS 8205, at *25 (D. Conn. Feb. 5, 2008) ("The Connecticut Supreme Court has held that claims of negligence in the context of continuing employment that result in emotional distress are barred as a matter of law.") (citing *Perodeau v. City of Hartford*, 259 Conn. 729, 758-63 (2002)).

Plaintiff cannot establish conduct during his termination proceeding that would meet the required threshold of severity to state a claim of negligent infliction of emotional

distress. "The dispositive issue . . . [is] whether the defendant's conduct *during the termination process* was *sufficiently wrongful* that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that [that] distress, if it were caused, might result in illness or bodily harm." *Perodeau*, 259 Conn. at 751 (emphasis in original; internal quotation marks omitted). Under the circumstances, Plaintiff cannot prove that the conduct during his termination was sufficiently wrongful to state a claims for the same reasons cited immediately above with respect to Plaintiff's intentional infliction of emotional distress claim.

Accordingly Defendant is entitled to summary judgment on the Seventh Count of the Complaint alleging negligent infliction of emotional distress.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendant's motion for summary judgment and dismiss all of Plaintiff's claims in their entirety and with prejudice.

DEFENDANT,
STAMFORD HOSPITAL


By:_____*/s/ Justin Theriault*_____
      Michael J. Soltis (CT07143)
      Justin Theriault (CT28568)
      JACKSON LEWIS P.C.
      1010 Washington Boulevard, 7th Floor
      Stamford, CT 06901
      Tel: (203) 961-0404
      Fax: (203) 324-4704
      Email: soltism@jacksonlewis.com
            justin.theriault@jacksonlewis.com

## CERTIFICATION OF SERVICE

I hereby certify that on July 1, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing as indicated below. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____ */s/ Justin Theriault* _____
Justin Theriault

4825-0278-1236, v. 3